IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EDWARD BAILEY II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:10-0902-DGK-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Edward Bailey II seeks judicial review of the Commissioner of Social Security's denial of his application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381a-1383. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

The administrative law judge ("ALJ") found that while Bailey had schizophrenia, he retained the residual functional capacity to perform jobs that were simple, repetitive, and routine in nature, and that such work existed in substantial numbers in the local and national economy. Finding no merit to Plaintiff's allegations that the ALJ erred in weighing the various physicians' opinions of the various physician, and that the ALJ's decision is supported by substantial evidence on the record as a whole, the Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

Generally, a federal court's review of the Commissioner's decision to deny an application for SSI benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, the Commissioner follows a five-step evaluation process.[1]

---

[1] The five-step process works as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

Plaintiff filed his application for benefits on August 13, 2007, alleging he became disabled on November 1, 2000, when he was 35 years-old. Plaintiff alleged disability due to schizophrenia.

The ALJ ruled Plaintiff was not under a disability as defined in the Act from August 13, 2007 through the date of decision.[2] The ALJ found that Plaintiff's schizophrenia was a severe impairment, but that his allegations and testimony were not credible concerning the extent of the limitation on his ability to work. With respect to Plaintiff's residual functional capacity ("RFC"), the ALJ found Plaintiff had no physical limitations, but because of his medication, he could not work on ladders, ropes, scaffolds, around hazardous machinery, or at heights. The ALJ also found Plaintiff had nonexertional limitations such that he could not be expected to understand, remember, or carry out detailed instructions, and that he should not have contact with the public. The ALJ found Plaintiff could, however, perform jobs that were simple, repetitive, and routine in nature, such as a housekeeper.

Plaintiff contends this decision is not supported by substantial evidence on the record. He contends that: (1) the ALJ erred by giving inadequate weight to the opinion of a "treating" physician; (2) the ALJ's credibility determination is not supported by substantial evidence on the record; and (3) the vocational expert's testimony is not supported by substantial evidence on the record. These arguments are without merit.

**A.     The ALJ did not err in weighing the different medical opinions.**

Plaintiff argues that the ALJ should have given greater weight to the opinion of a "treating source," Dr. David Terry, M.D., and less weight to the opinion of a one-time examining psychologist, Dr. Susan Barngrover, Ph.D. (Pl.'s Br. at 13-17.) The Court finds the record does

---

[2] Because SSI benefits cannot be paid for any months prior to when the application was filed, the relevant time period is from August 13, 2007, through the date of decision, January 20, 2010.

not support treating Dr. Terry as a treating source, and that Dr. Barngrover's opinion was well-supported and consistent with the treatment notes in the record, thus the ALJ did not err in giving it great weight. (Tr. 14.)

Under the regulations, treating physicians' opinions are generally entitled to greater weight than consultative opinions, which generally receive greater weight than opinions of non-examining physicians. *See* 20 C.F.R. § 416.927(d) (discussing the weight due medical opinions). More weight is generally given to treating sources because they are often able to provide a detailed picture of a claimant's medical impairment and may bring a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 416.927(d). In considering how much weight to give a treating source's opinion, the ALJ must consider, among other factors, the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship. *See id.*

As a threshold matter here, there is no evidence that Dr. Terry ever met with the Plaintiff, much less treated him. Between August 2005 and July 2009, Plaintiff saw a number of physicians at Truman Medical Center Behavioral Health ("Truman"). He saw Dr. Sharma nine times, Dr. Moorthy seven times, Dr. Fields and Dr. Khan five times, and Dr. Vayalapalli four times. (Tr. 199, 202-03, 208, 210-11, 213, 217, 226, 228, 243-44, 246-47, 277, 279-80, 285, 288-89, 292-93, 296-297, 300-01, 303, 307, 311, 314-15, 318-19, 322, 341.) Plaintiff also met with the following doctors at least once: Dr. Kim, Dr. Kononov, and Dr. Farhan (Tr. 218, 200, 222, 224, 230, 233, 235, 238, 240, 273, 276), and Dr. Elhaj, Dr. Marchak, Dr. Metzner, and Dr. Romaine-Tyson on multiple occasions. (Tr. 196, 198-99, 202, 204, 206, 215, 217-18, 226, 244, 283.) There is no record, however that Dr. Terry ever saw the Plaintiff or treated him. Although

4

Plaintiff asserts that the resident and attending physicians who treated Plaintiff at Truman "were closely supervised by Dr. Terry" and "always conferred with Dr. Terry during his visits," Dr. Terry's name is not found on any of the Truman treatment records. In fact, during his October 2009 examination with Dr. Barngrover, Plaintiff reported that his treating physician was Dr. Farhan. Given that there is no evidence that Dr. Terry ever met the Plaintiff, or otherwise had the type of detailed picture of Plaintiff's medical impairments contemplated by the regulations that would justify giving his opinion more weight, the ALJ did not err in not treating Dr. Terry as a treating physician.

Even if Dr. Terry were a treating physician, the ALJ could not give his opinion controlling weight because it was not well-supported and it was inconsistent with other substantial evidence of record. Although a treating physician's opinion concerning an applicant's functional limitations is generally entitled to substantial weight, "[a] treating physician's opinion does not automatically control or obviate the need to evaluate the record as a whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (internal quotation omitted). "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

Here Dr. Terry simply marked boxes on a form indicating that Plaintiff would have frequent or constant limitations in his ability to make occupational adjustments, exercise judgment, and understand and carry out even simple job instructions. (Tr. 324.) These conclusions are inconsistent with the opinions of the treating physicians who actually met with Plaintiff, and indicated that Plaintiff's attention and concentration were intact, that his thought

process was logical and goal-directed, and that his judgment was not impaired. (Tr. 166, 181, 188, 197, 205, 209, 216, 219, 223, 227, 235, 242, 245, 275, 282, 287, 291, 299, 303, 309, 320.) Additionally, while Dr. Terry indicated that Plaintiff would constantly be limited in his ability to maintain personal appearance (Tr. 325), the treatment notes in the record consistently report that Plaintiff was well-groomed, neatly dressed, and that his hygiene was good or fair. (Tr. 180, 184, 187, 197, 200, 205, 209, 212, 216, 219, 227, 231, 235, 242, 245, 279, 281, 286, 294, 298, 305, 312.) Although Plaintiff suggests that instead of giving Dr. Terry's opinion no weight, the ALJ should have developed the record further, an ALJ need not obtain additional medical evidence when the evidence on the existing record provides a sufficient basis for her decision. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Accordingly, the ALJ did not err in giving Dr. Terry's opinion no weight.

There is also no merit to the suggestion that the ALJ erred in giving more weight to Dr. Barngrover's opinion than to Dr. Terry's opinion. Dr. Barngrover took a detailed history from Plaintiff and spent more time examining the Plaintiff than Dr. Terry did. (Tr. 14, 326-331.) Dr. Barngrover's report is also consistent with those of the treating physicians. Dr. Barngrover noted Plaintiff was bright but might have some impaired concentration, that his insight and judgment were intact, that he was presently stable, and that he would be a good candidate for vocational rehabilitation. (Tr. 327-28.) She opined that his schizophrenia was mild and appeared to be improving with medication compliance. (Tr. 330.) With respect to Plaintiff's ability to work, she opined that his concentration and ability to interact appropriately with supervisors was mildly impaired. (Tr. 329-330.) Given that Dr. Barngrover's opinion was supported by, and consistent with, the record as a whole, the ALJ did not err in giving it some weight.

**B.     The ALJ's credibility determination is supported by substantial evidence on the record.**

Next, Plaintiff argues the ALJ's credibility findings are not supported by substantial evidence on the record.  Specifically, he argues the ALJ improperly discredited his credibility based on non-compliance with medication, and that she should have considered the side effects of the medication and Plaintiff's underlying mental illness in evaluating his non-compliance.  He also contends the ALJ improperly discredited his mother's testimony.

Credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts."  *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).  To analyze a claimant's subjective complaints, the ALJ must consider the entire record, including the claimant's medical records, statements by the claimant and third parties, and the *Polaski* factors, such as: 1) the claimants daily activities; 2) the duration, frequency, and intensity of pain; 3) dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions.  20 C.F.R. § 404.1529 (incorporating *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).  When the ALJ articulates inconsistencies that undermine Plaintiff's subjective complaints, and when those inconsistencies are supported by the record, the ALJ's credibility determinations should not be disturbed.  *See Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004).

In this case, the ALJ obviously considered the entire record and articulated her reasoning. Approximately three pages of her decision is devoted to discussing the disparity between Plaintiff's testimony and his treatment records.  For example, in discussing Plaintiff's compliance taking his medication, the ALJ noted Plaintiff was only minimally compliant for most of 2005, and that his symptoms increased when he stopped taking medication.  During this

7
Case 4:10-cv-00902-DGK   Document 9   Filed 02/07/12   Page 7 of 9

time he denied any recent substance abuse, but had a positive urinary drug screen for amphetamines. By contrast, the ALJ observed that in October of 2005, when Plaintiff was actually taking his medication, his "symptoms were well controlled with no side effects, no depression, and no mania." (Tr. 11-12.) Thus, the record supports the ALJ's finding that Plaintiff's non-compliance was not caused by his mental illness, rather it was linked to his substance abuse. The record also demonstrates that Plaintiff rarely complained to his doctors of side effects; on the one occasion he did, the problem was resolved by adjusting the dosage. (Tr. 11-13, 192, 204, 206, 209, 212, 216, 220, 223, 231, 235, 281, 286, 288, 290, 305, 313, 317, 327.) Finally, it has long been established that, "[i]mpairments that are controllable or amenable to treatment do not support a finding of total disability," *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999), thus the ALJ did not err in finding the Plaintiff was not credible for claiming he was incapable of working. In sum, the Court agrees with the ALJ's conclusion, which was:

> Claimant's allegations, including subjective complaints of pain, are not credible in light of discrepancies between claimant's assertions and information contained in the documentary reports; the reports of treating and examining practitioners; his poor history and history of unreported income; and the need for only mild or over-the-counter medication to control his symptoms. The undersigned finds the treatment notes show an extensive history of drug and alcohol dependence, but also show that when claimant is compliant with taking prescribed medication and abstinent from drug and alcohol use, his symptoms are minimal and his condition stabilizes. Further, the undersigned finds . . . claimant is not under a disability.

(Tr. 14-15.)

**C.     The ALJ did not err in relying on the vocational expert's testimony.**

Related to the above argument, Plaintiff contends that because the ALJ did not properly evaluate his credibility concerning the extent of his impairment, the hypothetical question the ALJ subsequently posed to the vocational expert ("VE") was also defective, and so the ALJ's

8

finding that Plaintiff retained the RFC to perform jobs listed by the VE is not supported by substantial evidence. As discussed above, however, the ALJ properly evaluated Plaintiff's credibility, thus the question posed to the VE, and the VE's answer, were also not in error.

## Conclusion

After careful examination of the record as a whole, the Court finds the ALJ's determination is supported by substantial evidence on the record, and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  February 7, 2012                           /s/ Greg Kays
                                                  GREG KAYS, JUDGE
                                                  UNITED STATES DISTRICT COURT